IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

RICHARD BRIAN ROBERTS AND
STACY ROBERTS

PLAINTIFFS

v.

Civil Action No.: 3:21-cv-00496
Judge Robert C. Chambers

MAXIM CRANE WORKS, LP,

and

INDEPENDENCE EXCAVATING, INC.

and

HUNTINGTON ALLOYS CORPORATION
d/b/a SPECIAL METALS

and

TITANIUM METAL CORPORATION

DEFENDANTS

## COMPLAINT

NOW COME Plaintiffs, Richard Brian Roberts and Stacy Roberts, by and through the undersigned counsel, and for their Complaint against the Defendants, Maxim Crane Works, LP, Independence Excavating, Inc., Huntington Alloys Corporation, and Titanium Metal Corporation, (collectively the "Defendants"), state and aver as follows:

### PARTIES

1. Plaintiffs, Richard Brian Roberts and Stacy Roberts, are now, and at all times relevant herein were married and residents of Boyd County, Kentucky.

2. Upon information and belief, Defendant, Maxim Crane Works, LP., (hereinafter "Maxim"), is a construction contractor. Maxim is a limited partnership organized under the laws

of Pennsylvania and is registered to do business in the State of West Virginia, and maintains a principal place of business located in Pennsylvania. Maxim has a local address at 101 Independent Avenue, Nitro, WV 25143.

3. Upon information and belief, Defendant Independence Excavating, Inc., (hereinafter "Independence") is a contractor that at times provides general contracting services. Independence is incorporated under the laws of Ohio, is registered to conduct business in the State of West Virginia, and maintains its principal place of business in Ohio.

4. Upon information and belief, Defendant Huntington Alloys Corp., d/b/a Special Metals (hereinafter "Special Metals") owns and operates a facility located in Huntington, West Virginia. Special Metals is organized under the laws of Delaware, registered to conduct business in the State of West Virginia, and maintains a principal place of business located in Oregon. Special Metals has a local address at 3200 Riverside Drive, Huntington, WV 25705.

5. Upon information and belief, Defendant, Titanium Metals Corp., (hereinafter "Titanium") is incorporated under the laws of Delaware and maintains its principal place of business in Ohio.

6. At all relevant times herein, each of the Defendants, directly, or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority, has, upon information and belief: transacted business in Cabell County, West Virginia; contracted to supply or obtain services or goods in Cabell County, West Virginia; intentionally availed itself of the benefits of doing business in West Virginia; produced, promoted, sold, marketed, and/or distributed its products or services in West Virginia, and thereby, has purposefully profited from its access to markets in West Virginia; and otherwise had the requisite minimum contacts with

West Virginia such that, under the circumstances, it is fair and reasonable to require Defendants to come to this Court to defend this action.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter under 28 U.S.C. 1332. The Defendants are from Pennsylvania and Ohio and Plaintiff is from Kentucky.

8. Venue is proper in this Court in that all material acts described herein occurred in Cabell County, West Virginia, and Plaintiffs' causes of action arose in Cabell County, West Virginia in the Southern District of West Virginia.

9. These claims arise under the substantive laws of the State of West Virginia applied by this Court through its diversity jurisdiction.

## FACTUAL ALLEGATIONS

10. Upon information and belief, the events underlying this Complaint center upon the decision of the Defendants herein to remove a lifting lug from a mill-stand to inspect the same prior to relocation of the mill-stand itself.

11. Upon information and belief, the mill-stand was located at the Special Metals facility in Cabell County, West Virginia and had been purchased by Timet who had purchased the same. The inspection of the lifting lug was undertaken as the result of a previously failed attempt to move the mill-stand.

12. Upon information and belief, Independence was the general contractor in charge of the mill-stand move and Maxim was contracted by Independence to assist with the project. Maxim then brought in Clay Construction, Mr. Roberts' employer, to assist with the removal of the lifting lug from the mill-stand.

13. Upon information and belief, Independence, Maxim, and Special Metals had individuals, including safety personnel, present for portions of the activities of October 25, 2019. Independence required the Clay employees present, as well as certain other individuals to sign in and sign off on a Safety Task Analysis. Additionally, there was a sign-in sheet on a Toolbox Talk form.

14. Upon information and belief, the individuals from Clay Construction, including Mr. Roberts were informed upon arrival that the lifting lug would be removed through the top of the mill-stand and that Maxim would be there with a boom truck/crane to complete the removal. Clay was to remove the lug nuts and wedge locks from the base of the mill-stand.

15. Upon information and belief, there appears to have been no planning documents created for the lift and/or Mr. Roberts' role in the same. Specifically, it does not appear that a sufficient engineering investigation was undertaken to determine the actual interconnection of the mill-stand and lifting lug.

16. Upon information and belief, it does not appear that even the most basic information gathering occurred with regards to speaking with individuals with knowledge of the parts of the mill-stand. Specifically, multiple parties to the present controversy were also parties to the previously failed lift, including parties with institutional knowledge of the mill-stand, lifting lug and the interconnection of the same. Additionally, other parties to that previous lift were also available for consultation, but it appears that no such consultation occurred prior to the attempted removal of the lifting lug.

17. Further, despite the Safety Task Analysis form, there doesn't appear to have been compliance with that document. Specifically, the first rule of the Safety Task Analysis states, "An

Engineering Survey must be completed prior to beginning demolition." Further, per the Safety Task Analysis, "employees are not permitted to work underneath overhead loads."

18. Further, despite the presence of a boom truck/crane, nothing was used to secure the lifting lug before removal from the mill-stand.

19. As a result of the above failures, improper instruction and direction was given to Mr. Roberts' and Clay Construction and in fact, the lifting lug at issue was removable from the bottom such that, when both nuts and one wedge lock were removed, the lifting lug dropped onto Mr. Roberts. This caused expected, extreme, and extensive injuries.

20 . The aforesaid accident was a direct and proximate result of the acts and/or omissions of Defendants, as set forth herein below.

21. As a direct and proximate result of the acts and omissions of the Defendants as described herein, Plaintiffs have sustained personal injuries and damages as hereinafter set forth.

### COUNT I

22. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

23. Defendant Maxim had a duty to individuals, including Plaintiff, engaging in work supervised and/or directed by Maxim in part, including the relevant work of removing the lifting lug from the mill-stand on October 25, 2019 to act as reasonably prudent contractor.

24. Defendant Maxim had a duty to use reasonable care and act as a reasonably prudent contractor in supervising, directing, engineering and/or designing the work of removing the lifting lug from the mill-stand on October 25, 2019.

25. Defendant Maxim further had a duty to not impart incorrect information to the individuals it brought in to perform the work of removing the lifting lug from the mill-stand on October 25, 2019.

26. Despite the above, Defendant Maxim breached those duties and was negligent in failing to use reasonable care in ensuring that an appropriate engineering design was prepared prior to the attempted lift of the lifting lug from the mill-stand, in failing to property plan for the lift of the lifting lug, in failing to ensure compliance with regulations regarding the release of stored energy during the lift, in failing to secure the lifting lug prior to removal of the lug nuts and wedge locks, in conveying incorrect information regarding the manner in which the lifting lug was interconnected with the mill-stand, in failing to communicate with others knowledgeable about the mill-stand to determine appropriate and correct information regarding the same, and in failing to ensure proper safety devices were present and/or used during the lift of the lifting lug.

27. As a direct and proximate result of the acts and omissions of the Defendant Maxim as described herein, Plaintiff Brian Roberts sustained severe and significant personal injuries and damages as hereinafter set forth.

## COUNT II

28. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

29. Defendant Independence had a duty to individuals, including Plaintiff, engaging in work supervised and/or directed by Independence in whole or in part, including the relevant work of removing the lifting lug from the mill-stand on October 25, 2019 to act as reasonably prudent general contractor.

30. Defendant Independence had a duty to use reasonable care and act as a reasonably prudent general contractor in supervising, directing, engineering and/or designing the work of removing the lifting lug from the mill-stand on October 25, 2019.

31. Defendant Independence further had a duty to not impart incorrect information to the individuals it brought in to perform the work of removing the lifting lug from the mill-stand on October 25, 2019.

32. Despite the above, Defendant Independence breached those duties and was negligent in failing to use reasonable care in ensuring that an appropriate engineering design was prepared prior to the attempted lift of the lifting lug from the mill-stand, in failing to property plan for the lift of the lifting lug, in failing to ensure compliance with regulations regarding the release of stored energy during the lift, in failing to secure the lifting lug prior to removal of the lug nuts and wedge locks, in conveying incorrect information regarding the manner in which the lifting lug was interconnected with the mill-stand, in failing to communicate with others knowledgeable about the mill-stand to determine appropriate and correct information regarding the same, and in failing to ensure proper safety devices were present and/or used during the lift of the lifting lug.

33. As a direct and proximate result of the acts and omissions of the Defendant Independence as described herein, Plaintiff Brian Roberts sustained severe and significant personal injuries and damages as hereinafter set forth.

## COUNT III

34. Upon information and belief, at all relevant times herein, the Special Metals facility was owned, operated, and/or controlled by Defendant Huntington Alloys Corp, d/b/a Special Metals.

35. As the owner and/or operator of the Special Metals Plant, Special Metals was at all times in control of the plant and directed all work being performed by its agents, servants, employees, contractors, subcontractors, and all other persons and entities at the Plant.

36. Upon information and belief, Special Metals requires individuals present at the Plant for any reason, including contractors and subcontractors, to watch safety videos and sign relevant documents prior to entry into the Plant.

37. Upon further information and belief, on October 25, 2019, during the relevant work, Special Metals had individuals present, including safety personnel.

38. Whether by assumption of a duty or through operation of law, Special Metals had the responsibility for safety at the Special Metals Plant and owed all contractors, subcontractors and their agents, servants and employees, and more particularly Plaintiff Richard Brian Roberts, non-delegable duties of due and reasonable care in its control, operation and supervision of all activities and work being performed at the Special Metals Plant.

39. The duties owed by Defendant Special Metals, and its agents and employees, to Plaintiffs included, but were not limited to:

    a. Supervising its contractors, subcontractors and their agents, servants and employees performing work and/or services at the Plant;

    b. Providing a safe work environment at the Plant;

    c. Developing, initiating, employing and enforcing safety policies and procedures to ensure a safe work environment;

    d. Ensuring that each contractor, subcontractor and their agents, servants and employees abided by all safety policies and procedures;

e. Ensuring that each contractor, subcontractor and their agents, servants and employees abided by all controlling state and federal rules and regulations;

f. Ensuring that each contractor, subcontractor and their agents, servants and employees did perform work on the mill-stand unless all appropriate studies, engineering or otherwise, and all pre-work planning was appropriately performed; and/or taking all other reasonable and appropriate actions so as to eliminate harm or injury to Plaintiffs and others under circumstances similar to those described herein.

40. On October 25, 2019, Defendant Special Metals negligently and/or recklessly breached the aforementioned duties by, without limitation:

a. Failing to properly supervise its contractors, subcontractors and their agents, servants and employees working at the Plant and specifically

b. failing to supervise Defendants Maxim and Independence;

c. Failing to use reasonable care to provide and maintain a safe place to work for Plaintiff, fit with proper and adequate contractors, subcontractors, machinery, and equipment;

d. Failing to promulgate and enforce reasonable rules, regulations, policies and procedures, to ensure the safety and health of its contractors, subcontractors, and their agents, servants and employees at the Plant;

e. Failing to abide by state and federal rules and regulations that were in effect and controlling at the time of this incident;

f. Failing to make certain and/or neglecting to instruct and ensure that its contractors and/or subcontractors properly engineered the lift of the lifting lug, secure the lifting lug, and plan for the lift of the lifting lug;

g. Failing to meet the standards of care requisite in the industry;

h. Failing to take all other reasonable and appropriate actions so as to eliminate harm or injury to Plaintiffs and others under circumstances similar to those described herein;

i. Failing to ensure that an appropriate engineering design was prepared prior to the attempted lift of the lifting lug from the mill-stand,

j. Failing to property plan for the lift of the lifting lug;

k. Failing to ensure compliance with regulations regarding the release of stored energy during the lift

l. Failing to secure the lifting lug prior to removal of the lug nuts and wedge locks;

m. Conveying incorrect information regarding the manner in which the lifting lug was interconnected with the mill-stand;

n. Failing to communicate with others knowledgeable about the mill-stand to determine appropriate and correct information regarding the same; and/or,

o. Failing to ensure proper safety devices were present and/or used during the lift of the lifting lug.

41. Upon information and belief, Defendant Special Metals knew of the foregoing conditions causing the incident which resulted in the injuries and damages to Plaintiffs and did not correct them, and/or the Special Metals had control of the relevant equipment for a sufficient length

of time so that Special Metals in the exercise of reasonable care should have learned of the proper operation of the same and properly instructed as to the same.

42. As a direct and proximate result of the acts and omissions of the Defendant, Special Metals, as described herein, Plaintiff Brian Roberts sustained severe and significant personal injuries and damages as hereinafter set forth.

## COUNT IV

43. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

44. Defendant Timet had a duty to ensure individuals, including Plaintiff, engaging in work requested by, supervised by and/or directed by Timet, in whole or in part, including the relevant work of removing the lifting lug from the mill-stand on October 25, 2019, act in a reasonably prudent manner.

45. Defendant Timet had a duty use reasonable care and act in a reasonably prudent manner to ensure that appropriate investigation, planning and engineering was performed prior to the relevant lift and to ensure that applicable guidelines, regulations and safety protocols and standards were followed with regard to the work of removing the lifting lug from the mill-stand on October 25, 2019.

46. Despite the above, Defendant Timet breached those duties and was negligent in failing to use reasonable care in ensuring that an appropriate engineering design was prepared prior to the attempted lift of the lifting lug from the mill-stand, in failing to assist in or ensure a proper plan for the lift of the lifting lug was in place, in failing to ensure compliance with regulations regarding the release of stored energy during the lift, in failing to ensure the lifting lug was secured prior to removal of the lug nuts and wedge locks by plan, in failing to communicate with others

knowledgeable about the mill-stand to determine appropriate and correct information regarding the same, and in failing to ensure proper safety devices were present and/or used during the lift of the lifting lug by plan.

47. As a direct and proximate result of the acts and omissions of the Defendant, Timet as described herein, Plaintiff Brian Roberts sustained severe and significant personal injuries and damages as hereinafter set forth.

## COUNT V

48. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

49. Defendants conduct in failing to use reasonable care in ensuring that an appropriate engineering design was prepared prior to the attempted lift of the lifting lug from the mill-stand, in failing to assist in or ensure a proper plan for the lift of the lifting lug was in place, in failing to ensure compliance with regulations regarding the release of stored energy during the lift, in failing to secure the lifting lug prior to removal of the lug nuts and wedge locks, in failing to communicate with others knowledgeable about the mill-stand to determine appropriate and correct information regarding the same, and in failing to ensure proper safety devices were present and/or used during the lift of the lifting lug were a proximate cause of serious bodily injury to Mr. Roberts.

50. That with regard to each of the foregoing failures, the actions of Defendants rose to such a level as to constitute gross negligence, actual malice and/or a conscious, reckless and outrageous indifference to the health, safety and welfare of Mr. Roberts so as to justify an award of punitive damages.

## COUNT VI

51. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

52. A spouse has an independent cause of action for support, services, love, affection, care, companionship, society, and consortium of her husband tortiously injured by a third-party.

53. As a direct and proximate result of Defendants' acts and omissions described herein, causing injuries and damages to Richard Brian Roberts, Plaintiff Stacy Roberts has sustained loss of her husband's services, love, affection, care, companionship, society, and consortium.

54. Inasmuch as the injuries of Richard Brian Roberts are permanent and lasting in nature, Plaintiff, Stacy Roberts, will continue in the future to be deprived of the consortium and services of her husband, Richard Brian Roberts and Mrs. Roberts is entitled to recovery for the same in an amount to be determined by a jury.

## DAMAGES

55. Plaintiffs hereby reassert and incorporate the allegations in all preceding paragraphs as if the same were fully set forth herein.

56. As a direct and proximate result of each wrongful and tortious act of the Defendants as described herein, Plaintiff Richard Brian Roberts has sustained the following injuries, damages, and loses:

a. Severe and permanently disabling personal injuries as well as psychological injuries, past and future;

b. Obligations for medical services and expenses, past and future;

c. Extreme physical pain and suffering, past and future;

d. Extreme mental anguish and suffering, past and future;

e. Permanent physical impairment;

f. Loss of capacity to enjoy life and engage in normal activities, past and future;

g. Loss of earnings and loss of future earning capacity which will continue into the indefinite future;

h. Annoyance and inconvenience, humiliation, embarrassment, and aggravation, past and future: and

i. Other damages.

57. As a direct and proximate result of each wrongful and tortious act of the Defendants as described herein, Plaintiff Stacy Roberts has sustained loss of her husband's services, love, affection, care, companionship, society, and consortium.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Richard Brian Roberts and Stacy Roberts, respectfully request that this Court enter judgment against Defendants, Maxim Crane Works, LP, Independence Excavating, Inc., Huntington Alloys Corporation, and Titanium Metal Corporation, jointly and severally:

A) Awarding Plaintiffs all damages, legal and equitable, including (without limitation) compensatory, consequential, equitable, exemplary, monetary, punitive, double, treble, statutory, and every other form of damages to which they may be entitled;

B) Awarding Plaintiffs pre- and post-judgment interest at the maximum rate permitted by law;

C) Awarding Plaintiffs their attorneys' fees, costs, and expenses; and

D) Awarding Plaintiffs such further and additional relief as may be available and warranted under the circumstances of this case. The minimum jurisdictional amount established for filing this action is satisfied.

PLAINTIFFS DEMAND A TRIAL BY JURY.

                                        Respectfully submitted,

                                        VANOVER, HALL & BARTLEY, P.S.C.

                                        By /s/ Alexander C. Ward
                                        Alexander C. Ward (WV Bar 9430)
                                        126 Trivette Drive, Suite 302
                                        Pikeville, Kentucky 41501
                                        Telephone: (606) 437-4003
                                        Fax: (606) 437-7847
                                        Email: award@vhblaw.com
                                        *Counsel for Plaintiffs*